FILED
IN CLERKS OFFICE

2013 MAR -6  A 11: 36

U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**In RE: SUBPOENA OF DR.**
**DAVID LISAK DATED**
**MARCH 5, 2013**                                    CIV. NO. _____

### EXPEDITED MOTION TO QUASH

Pursuant to Fed. R. Civ. P. 45 (c), David Lisak, Ph.D., a non-party in this case, files the

following *pro se* Expedited Motion to Quash a Subpoena to Testify at a Deposition in Civil Action,

which is appended to this Motion as Exhibit 1.

**I.      Background.**

On March 5, 2013, the undersigned was served via certified mail a Subpoena to Testify at

a Deposition in Civil Action. The subpoena noticed a deposition scheduled for March 26, 2013 in

Boston, Massachusetts and included a subpoena *duces tecum* to produce documents generated in my

work on this case. This subpoena relates to a capital habeas corpus hearing in April at which I am

scheduled to testify. The undersigned is not a party to the underlying action.

On January 23, 2013, the Respondent moved the Court to take my deposition. On January

28, 2013, without any interim action from the Court, the Respondent then moved the Court to

exclude my testimony at the April 17-19, 2013 hearing because "the opinions and conclusions of Dr.

Lisak are wholly irrelevant to the defenses outlined in petitioner's Reply." On February 20, 2013,

the Court granted the Respondent's motion in part. The Court granted the Respondent leave to take

my deposition, extended the discovery deadline to April 1, 2013 for the sole purpose of conducting

my deposition, and reserved ruling on the Respondent's motion in limine to exclude my testimony

to determine "at a later date." *Id.* at 2–3. As of this filing, the motion in limine is still pending.

That same day, I received an email from Ms. Deborah Czuba, Mr. Coulter's counsel, who

informed me that the Court had granted the Respondent's Motion for leave to depose me and inquired about my availability for a deposition, either in Boston, Massachusetts or in Little Rock, Arkansas between February 20, 2013 and April 1, 2013. As of that date, I had outstanding professional obligations in the next five weeks in New Mexico, Toronto, Georgia, Texas, Nevada, the Pentagon in Virginia, California, and a presentation at Harvard University with travel and housing accommodations arranged for most, if not all, of those trips. The next day, February 21, 2013, I responded that I was unable to travel to Little Rock, Arkansas, for the deposition in the proceeding five weeks due to my outstanding professional obligations, but that I was available to conduct a deposition in Boston, either by phone or in person, on March 17, 2013. Counsel for Mr. Coulter relayed to the Respondent my March 17, 2013 availability as well as my travel itinerary for March, 2013, which detailed my professional obligations across the country for that month.

I learned later, despite my outstanding professional obligations in different parts of the country in the interim weeks, that counsel for the Respondent preferred that I travel to Little Rock to sit for the deposition and that March 17, 2013 was "not workable" for counsel for the Respondent. The Respondent then issued a subpoena for my deposition on March 26, 2013 in Boston, Massachusetts, which I received via certified mail on March 5, 2013. Because of the quickly approaching date, I filed the instant Expedited Motion to Quash.

## II.   Argument.

The Court must quash the outstanding subpoena for four reasons. First, the subpoena was not properly served pursuant to Federal Rule of Civil Procedure 45. Second, the Court is required to quash the subpoena pursuant to Federal Rule 45(c)(3)(A) because compliance would constitute an undue burden. Third, the Court should quash the subpoena *duces tecum* because it improperly seeks

the production of documents beyond the discovery schedule set by the Court in Arkansas in this matter. Finally, the court should quash the subpoena *duces tecum* because the subpoena requires disclosure of privileged documents. I will address each in turn.

    A.    *This Court Should Quash the Subpoena Because It Was Improperly Served and Non-Compliant With Fed. R. Civ. P. 45(b).*

The Court should quash the instant subpoena because the subpoena was not personally served and was unaccompanied by the required witness fees pursuant to Federal Rule 45(b). Under Federal Rule 45(b), a party is required to "deliver[] a copy to the named person and, if the subpoena requires the person's attendance, tendering the fees for 1 day's attendance and mileage allowed by law." Fed. R. Civ. P. 45(b)(1). Personal delivery is the only method of service specified by the Rule. *See* U.S.C.A., Fed. R. Civ. P. 45, Eds. Note C45-9 (explaining that personal delivery is the "sole method" of service, which "differs substantially from service of the summons under Rule 4, for which a variety of methods are made available."). Service by mail is an improper method of service and service of the subpoena on the witness's attorney is similarly impermissible. *See id.* ("The recently adopted mail method for summons service . . . is not available for subpoena service" and explaining that service on a witness's attorney is not allowed "even if the attorney-client relationship is known."). Additionally, service of a subpoena is deficient if the witness fee and mileage allowed by law are not tendered to the witness when the subpoena is delivered. *See* Fed. R. Civ. P. 45(b)(1); *see also* 28 U.S.C.A. § 1821 (outlining the per diem and mileage for witnesses).

On March 5, 2013, I received via certified mail a subpoena commanding my appearance to attend a deposition in Boston, Massachusetts on March 26, 2013. *See* Ex. 1 (copy of issued subpoena). The subpoena was not served on me personally nor anyone working on my behalf in my

office that is qualified to accept service. Instead, the subpoena was sent from Little Rock, Arkansas via certified mail. Further, the subpoena was unaccompanied by any payment of witness fees required by the Rule. Because the subpoena failed to comply with the two fundamental service requirements of the Rule, the Court should quash the instant subpoena as ineffective.

      B.     *The Court Is Compelled to Quash the Instant Subpoena Because Compliance Would Subject Me and My Practice to an Undue Burden.*

The Court should quash the instant subpoena because I proposed an available date to take my deposition on March 17, 2013, and compliance with the subpoena requiring my deposition on March 26, 2013 would constitute an undue burden as that day specifically has been allotted to work on an Oklahoma case necessary for the client's evaluation in mid-April.

      1.     <u>The Respondent Failed to Take Reasonable Steps to Avoid Imposing an Undue Burden or Expense Pursuant to Federal Rule 45(c)(1).</u>

Under Federal Rule 45(c)(3), a Court is required to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45. A party issuing a subpoena is to take "reasonable steps to avoid imposing undue burden or expense" on a person subject to a subpoena. Fed. R. Civ. P. 45(c)(1). A subpoena may be issued in "'good faith" but still may be improper if the party serving the subpoena failed to "take reasonable steps to avoid imposing undue burden."' *See Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000). Because counsel for the Respondent failed to schedule the deposition on the otherwise available March 17, 2013, the Respondent failed to take reasonable steps to avoid imposing an undue burden in this case.

On February 20, 2013, the local federal habeas court granted the Respondent's request to depose me before April 1, 2013. I have several outstanding professional obligations in March, many of which involve pre-arranged travel and housing accommodations. Because I contract so heavily

4

with the federal government, in light of the sequestration, it is nearly impossible to cancel and reschedule many of these current travel arrangements without incurring a substantial expense. In light of my professional obligations, I proposed March 17, 2013 as an available date for a deposition in Boston, Massachusetts. I was amenable to a deposition via telephone or in person. I also provided my travel itinerary to counsel in good faith to provide evidence of my tight travel schedule and many outstanding professional obligations. The Respondent has two different attorneys working on this case, either of whom could have made themselves available to depose me on that date. I was informed that March 17, 2013 was not a "workable" date for counsel for the Respondent without any further explanation.

Instead of taking reasonable steps to prevent against undue burden by scheduling the deposition on March 17, 2013, counsel for the Respondent unilaterally issued a subpoena for Tuesday, March 26, 2013 at 9:00 a.m. which imposes a significant undue burden. *See* Ex. 1. The undersigned examined his schedule and in good faith proposed a full day for deposition discovery in this case, either by telephone or in person. The Respondent, who requested the deposition discovery from the Court, found the date "unworkable" without stating anything further. Because of the failure to take steps to avoid undue burden and expense, the Court should quash or modify the instant subpoena.

2. The compliance of the undersigned, a non-party, constitutes an undue burden under Fed. R. Civ. P. 45(c)(3)(A)(iv).

The presently issued subpoena presents a significant undue burden on the undersigned and his practice because the Respondent knew that March 26, 2013 was not an available date because of my professional obligations. March 26, 2013 has been allotted for time-sensitive work on an

Oklahoma capital case, which is essential for an impending client evaluation for a clemency action. To determine whether compliance with a subpoena constitutes an undue burden, courts balance the "relevance of the documents sought, the necessity of the documents sought, the breadth of the request . . . expense and inconvenience" can be considered. *See Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (2009). Additionally, the First Circuit has recognized that "concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs." *Behrend*, 248 F.R.D. at 85-86 (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998)) (emphasis added). These protections authorize this Court to quash or modify the subpoena issued for March 26, 2013 in this case.

The deposition unilaterally scheduled on March 26, 2013 via the instant subpoena would impose a considerable, if not impracticable burden on the undersigned. First, compliance with the subpoena would subject me, a non-party in this case, and my practice to considerable burden, time expense, and costs. *See Boston Children's Heart Found., Inc. v. Nadal-Ginard*, No. Civ. A. 93-12539-REK, 1995 WL 17015062 at *2 (D. Mass. Aug. 23, 1995 (absent a court order, a non-party bears its own production cost). In scheduling my professional obligations, I purposefully decided to remain in Boston, Massachusetts on March 26, 2013 to dedicate that entire day to essential review of the Oklahoma clemency case, which is time-sensitive. I purposefully and in good faith did not obligate myself in other parts of the country on that date so as to conduct the necessary work on the Oklahoma case. Indeed, the preceding week I will be in Santa Barbara, California, and I leave the following day, Wednesday, March 27, 2013, to travel to Atlanta, Georgia to give a presentation at Emory University. After my presentation at Emory University in Georgia, I travel back to Boston for a presentation at Harvard University, then travel the next day to Baltimore, MD, Madison, WI,

back to Boston, MA for a training at Boston College, then to New Orleans, LA and finally to Texarkana, AR for my testimony in this case. In light of this schedule, I detailed to the parties my professional obligations across the country and proposed, in good faith, March 17, 2013 as an available date. Despite the Respondent having two attorneys working on this case, the Respondent represented that March 17, 2013 was not workable without any further explanation.

Here, the necessity of the deposition itself is not outweighed by the considerable burden to the undersigned because the Respondent already has a comprehensive and thorough expert report containing all documents upon which I relied upon in offering my opinions. While the Court in Arkansas has allowed the Respondent leave to depose me, the burden in coordinating a deposition between now and April 1, 2013 is not justified in light of my fulsome expert report and the tremendous cost to both myself, my practice, and other non-parties that are effected by coordinating this deposition.

Finally, requiring the undersigned's presence at the scheduled deposition will not only unduly burden the undersigned, but affect the attorneys and client on the Oklahoma case that I am working on. *Cf. Solomon v. Nassau County*, 274 F.R.D. 455, 460 (E.D. N.Y. 2011) (considering the detrimental impact of the subpoena upon an "agency, the [] employees, and other patients" are applicable to a court's analysis of the undue burden standard). Rescheduling the March 26, 2013 date to work on the Oklahoma clemency case will leave me no time to review the necessary and voluminous record in the case to adequately prepare for the client evaluation in mid-April. Innocent third parties—including attorneys on other cases, conference participants, trainees, and clients—are dependent on me being prepared and knowledgeable about the details of their case. Because my schedule for the next eight weeks involves significant travel with back-to-back meetings, allowing

time to adequately prepare for those meetings requires the most meticulous time-management. It was in review of this schedule that I proposed March 17, 2013 as an available date to conduct the deposition. Instead, the Respondent failed to take efforts to prevent against the undue burden that sitting for a deposition on March 26, 2013 incurs.

Therefore, failure to modify or quash the subpoena will impose considerable and unreasonable expense on my time and business, but also prejudice additional innocent non-parties to this case. I am a non-party in this action and I made a good faith attempt to propose an available date for a deposition. In light of the foregoing, the undersigned requests that the Court quash the subpoena issued for March 26, 2013 because compliance would constitute an undue burden or, in the alternative, to modify the subpoena to issue for March 17, 2013 or to allow deposition by written questions as envisioned by Federal Rule of Civil Procedure 31.

C.    *The Subpoena* Duces Tecum *Should Be Quashed Because It Circumvents the Discovery Schedule Established by the District Court in This Case.*

Third, the subpoena's requirement for production of documents at the March 26, 2013 deposition should be quashed because it violates the District Court's discovery deadline in this case. The Court in this case issued a scheduling order whereby all discovery was to be completed "sixty days prior to the scheduled hearing" on April 17, 2013. *See* Ex. 2 at 2 ("2012 11 26 Order"). Therefore, discovery was to be completed on Friday, February 15, 2013. The Respondent moved to depose me, which the Court granted on February 20, 2013. *See* Ex. 3. In that Order, the Court was unequivocal that the discovery deadline was extended to April 1, 2013 "for the sole purpose of deposing Dr. Lisak." *Id.* at 5. The Court further ordered that "all other deadlines remain in effect" pursuant to the original scheduling Order. *Id.* Therefore, the Respondent's request for production

of documents at my deposition seeks to circumvent the discovery deadline set by the Court in this case.

The request for production of documents in a subpoena for a deposition that is beyond the discovery deadline was squarely addressed in *Alper v. United States*, 190 F.R.D. 281 (D. Mass. 2000). In *Alper*, the plaintiff sought the deposition of the Defendant's medical expert. In that subpoena, the plaintiff sought to depose the expert and also requested production of a "broad range of documents." *Alper*, 190 F.R.D. at 282. However, the discovery schedule required that all discovery be concluded by April 15, 1999; the subpoena for the expert's appearance with the request for documents was well beyond that date. *Id.* at 283. The Court in *Alper* held that a party should not be allowed to "employ a subpoena after the discovery deadline to obtain materials from third parties that could have been produced during discovery." *See id.* (citing *Rice v. United States*, 164 F.R.D. 556 (1995)); *see also Carter v. United States*, 164 F.R.D. 131, 133 (D. Mass 1995) (finding that the request for document production which was "heavily laden with document requests and divorced from any articulated bases for the oral testimony, were merely alternative means . . . to avoid the expiration of his right to written discovery . . . . and must be denied."). Thus, the Court in *Alper* held that a party cannot obtain through one means, Rule 45, "what he has been precluded from obtaining through another, the expired discovery schedule." *Alper*, 190 F.R.D. at 283.

Here, the Respondent is seeking to do indirectly what it cannot do directly. The Court in this case ordered that all discovery be completed by Friday, February 15, 2013. *See* Ex. 2. The extension of the discovery deadline to April 1, 2013 was "for the sole purpose of deposing Dr. Lisak." *See* Ex. 3 at 5. My expert report, which was accompanied by several hundred pages of documents in which I relied upon, was disclosed on January 17, 2013, nearly one month prior to the discovery deadline

9

ordered by the Court in this case. The Respondent did not propound any discovery requests with respect to my testimony prior to the discovery deadline. Now, the Respondent seeks to circumvent that discovery deadline by requesting that I disclose "all documents, including but not limited to, papers, reports, memorandums, notes, and emails regarding Roger Coulter," which is improper under the Federal Rules. *See Carter*, 164 F.R.D. at 133. (holding that deposition notices seeking extensive production of documents were an improper attempt to conduct written discovery after the deadline imposed by the scheduling order). For this reason, and the reasons stated by the Court in *Alper v. United States*, the Court should quash the subpoena with respect to the order for production of documents.

D.    *The Subpoena Should Be Quashed Because It Requires Disclosure of Privileged Matters Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii).*

Finally, the subpoena's request for "all documents . . . regarding Roger Coulter" necessarily involves the production of privileged information and documents that fall under the work product doctrine. Ex. 1. Under Federal Rule 45(c)(3)(A)(iii), a court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." While the undersigned appreciates that evaluating privilege and the work product doctrine is made on a case-by-case basis, Rule 45 requires that objections to the production of requested documents must be made within 14 days of service of the subpoena, and the undersigned seeks to preserve his objection to the subpoena *duces tecum* on both privilege and work-product grounds. *See Burroughs Corp. v. Dataware Sources, Inc.*, 7 Fed. R. Serv. 3d 346 (D. Mass 1987) ("When objections are not filed within the time provided by the Rule, the objections are waived."). While some courts hold that a subpoenaed party is not required to file an objection in the case of documents withheld on attorney-

client or work-product grounds before "responding" to the subpoena in accordance with Rule 45(d)(2), the undersigned notes his objections out of an abundance of caution. *See e.g.*, *Winchester Capital Management Co., Inc. v. Manufacturers Hanover Trust Co.*, 144 F.R.D. 170, 175 (D. Mass 1992) (recognizing that failure to file objections other than those based on attorney-client privilege and work product grounds constitutes a waiver of the objections).

Here, counsel for the Respondent seeks documents including but not limited to "papers, reports, memorandums, notes and emails" regarding Mr. Coulter. *See* Ex. 1. The undersigned has produced all documents related to Mr. Coulter in his expert report, save for e-mail communications between counsel for Mr. Coulter and myself. The undersigned now expressly states that those limited undisclosed communications are privileged and protected by the attorney-client privilege and on work product grounds. Those e-mail communications concern initial case consultation, scheduling issues, travel arrangements, meetings about case conferencing, and administration of the expert contract in association with my work on this case. The undersigned objects to disclosure of these documents sought by the Respondent's subpoena.

WHEREFORE, for the foregoing four reasons, Dr. Lisak respectfully requests that the Court expedite consideration of this Motion, quash the subpoena issued for the undersigned's deposition on March 26, 2013 as deficiently served and an undue burden on the undersigned, and quash the subpoena *duces tecum* because the Respondent seeks to circumvent the scheduling order in this case and seeks privileged and protected information.

Respectfully submitted,

/s/ David Lisak
David Lisak, Ph.D.

Forensic Consultation and Training
455 Winch Street
Framingham, MA 01701
(617) 947-4119

*Acting Pro Se*

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

David Lisak

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2013, an electronic copy of the foregoing Expedited Motion to Quash was sent to counsel for Respondent via electronic mail at pamela.rumpz@arkansasag.gov and eileen.harrison@arkansasag.gov and via hand-delivery to their attention at the Arkansas Attorney General, 323 Center Street, Suite 200, Little Rock, AR 72201 on the same day.

/s/ Jennifer Molayem
Jennifer Molayem